**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

YESENIA N. CARIÑO-ARGÜETA,

**Plaintiff,**

**v.**

SERVICIOS MÉDICOS INTEGRADOS DE FAJARDO, P.S.C.,

**Defendant.**

**Civil No.** 26-1330 (FAB)

# OPINION AND ORDER

BESOSA, Senior District Judge.

Before the Court is defendant Servicios Médicos Integrados de Fajardo, P.S.C. ("SMINF")'s motion to dismiss the complaint and to compel arbitration. (Docket No. 7.) For the following reasons, defendant's motion, insofar as it requests an order compelling arbitration, is **GRANTED**. The motion is otherwise **DENIED**, and this case is **STAYED** to permit the parties to arbitrate in accordance with the terms of their agreement.

## I. Background[1]

Defendant SMINF is an organization incorporated under the laws of the Commonwealth of Puerto Rico that is engaged in the

[1] The following facts are taken from plaintiff's complaint and are uncontested by defendant. Rivera-Colón v. AT&T Mobility P.R., Inc., 913 F.3d 200, 203, n.2 (1st Cir. 2019) ("Where, as here, the motion to compel arbitration was made as part of a motion to dismiss or stay, 'we glean the relevant facts from the operative complaint and the documents submitted to the district court in support of the motion.'") (quoting Oliveira v. New Prime, Inc., 857 F.3d 7, 9 n.1 (1st Cir. 2017)).

provision of healthcare services. (Docket No. 1 at p. 3, ¶8.) In 2015, SMINF hired Yesenia N. Cariño-Argüeta (Ms. Cariño) to work as a patient service officer. Id. at p. 5, ¶15. Her employment was governed by an employment agreement. See Docket No. 12-1.

In late 2024 and early 2025, Ms. Cariño was diagnosed by her neurologist with a variety of conditions that resulted in her having frequent and severe migraines. (Docket No. 1 at p. 5, ¶17.) According to Ms. Cariño's neurologist, these migraines were exacerbated by inadequate lighting in her workplace and prolonged exposure to screens without visual protection. Id. at p. 6, ¶18. Beginning in May 2025, Ms. Cariño requested accommodations from SMINF to address her migraines. Id. at p. 6, ¶19. These requests were directed to Ms. Olga Guerrero, a manager for SMINF. Id. Plaintiff alleges that Ms. Guerrero acted in the capacity of a human resources officer, but that SMINF lacked a formal "Office of Human Resources" as described in the employment agreement. Id. at p. 3-4, ¶9.

After Ms. Guerrero presented Ms. Cariño with the choice either to take a leave of absence or to apply for disability, Ms. Cariño took a six-month unpaid leave of absence. Id. at p. 7, ¶23. During this time, Ms. Cariño engaged in treatment for her migraines and supplied SMINF with multiple medical certificates from her neurologist documenting her conditions. Id. at pp. 7-8.

Upon her return to work, Ms. Cariño again requested workplace accommodations, which SMINF denied. Id. at p. 8, ¶31. Instead, SMINF unilaterally reduced Ms. Cariño's schedule to twenty hours per week. Id. Ms. Cariño continued to undergo treatment for her migraines and transmitted additional certifications from her neurologist that the conditions in her workplace exacerbated her conditions. Id. at p. 10, ¶35.

In the months following her return to work, Ms. Cariño was subject to multiple disciplinary actions, including a warning after she called out of a Monday morning meeting due to a migraine episode that began over the weekend, a five-day suspension for failing to come in to work the day following the meeting in which the warning was issued, and a second ten-day suspension based on various other allegations of workplace misconduct by SMINF. Id. at p. 13, ¶46.

On January 12, 2026, Ms. Cariño filed a charge of discrimination against SMINF with the "Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos" ("UAD") of the Commonwealth of Puerto Rico. Id. at p. 11, ¶38. While participating in the UAD proceedings, SMINF argued that Ms. Cariño's claim was governed by the arbitration clause contained in her employment contract. Id. at p. 15, ¶53. Ms. Cariño also filed a charge of discrimination and retaliation

with the Equal Employment Opportunity Commission ("EEOC"). Id. at p. 14, ¶49. On April 2, 2026, the EEOC issued a Determination and Notice of Right to Sue, following which Ms. Cariño had ninety days to file suit pursuant to federal law. Id. at pp. 14-15.

Upon receipt of the EEOC's Notice of Right to Sue, Ms. Cariño attempted to initiate the arbitration process with SMINF. Id. at p. 15-16. On April 20, 2026, she, through counsel, made a formal request to SMINF to activate the arbitration provision contained in her employment contract. Id. at p. 15, ¶54. SMINF's counsel responded on April 29, 2026 but did not take action to initiate arbitration.[2] Id. at p. 16, ¶56. Ms. Cariño's counsel contacted SMINF twice more, on May 1 and May 6, requesting that they initiate arbitration. Id. at p. 16.

On May 6, the day after Ms. Cariño submitted a request for leave to undergo a surgical procedure, SMINF terminated her employment. Id. at p. 16, ¶60. On May 8, SMINF responded to Ms. Cariño's counsel, saying that her request for arbitration had become moot due to her termination as an employee, and also asserted that it considered her arbitration request to be time-barred. Id. at p. 16, ¶58.

[2] In plaintiff's briefing, she states that SMINF said in its April 29th letter that "it was not giving course to her request and that the choice of forum was hers to make." (Docket No. 11 at p. 9.) Neither party has provided the Court with this letter and defendant has not contested this fact.

Up against the 90-day statutory window in which she had to file suit, Ms. Cariño filed this action against SMINF, alleging discrimination and retaliation under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Id. at p. 18-23. In response, SMINF filed this motion to dismiss the complaint and compel arbitration. (Docket No. 7.)

The parties' employment contract provides that "any and all claims or controversies directly or indirectly related to, or arising under, this contract, or [Ms. Cariño's] job with the Company, including, but not limited to, termination of employment, salary claims, bonus payments, accrual or use of eaves, etc., shall be resolved through an arbitration process". (Docket No. 12-1 at p. 3.) The arbitration shall be held in Fajardo, Puerto Rico. Id. The agreement also contains dispute resolution provisions requiring the employee to first submit any complaint to SMINF's Office of Human Resources within thirty days of the occurrence on which it is based, and upon an adverse determination of the complaint, initiate arbitration within thirty days of the determination. Id. at p. 4. The agreement further provides that if either the employee or the employer fails to take the steps required by the dispute resolution provisions within the specified timeframe the matter shall be deemed resolved against the noncompliant party and "shall not be arbitrable." Id.

## II. Discussion

### A. Motion to Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), permits a litigant to petition a court to order the parties to proceed with an arbitration in accordance with an arbitration agreement. Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005). The statute represents "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Paulson PRV Holdings LLC v. Ghaffar, No. CV 23-1521, 2024 WL 5412904, at *2 (D.P.R. Dec. 20, 2024) (López, M.J.) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). The FAA provides, in pertinent part, that "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 1. "Upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. § 4.

As an initial matter, rather than invoke the FAA, defendant frames its argument in terms of Federal Rule of Civil Procedure Rule 12(b) ("Rule 12(b)"). (Docket No. 7 at p. 18.) None of the provisions of Rule 12(b) upon which defendant relies, however, governs the motion before the Court. Rule 12(b)(1) (subject-matter jurisdiction) is inapplicable because "the existence of a valid arbitration agreement does not strip the court of jurisdiction." Álvarez-Maurás v. Banco Popular of P.R., 919 F.3d 617, 623 n.8 (1st Cir. 2019). Instead, on a motion to compel arbitration, a court may "'look through' a [FAA section] 4 petition to determine whether it is predicated on an action that 'arises under' federal law." Vaden v. Discover Bank, 556 U.S. 49, 62 (2009). Plaintiff's ADA claim satisfies this test. Likewise, Rule 12(b)(3) (venue) is inapplicable because the FAA empowers a district court to order an arbitration to proceed in the "district in which the petition for an order directing such arbitration is filed," 9 U.S.C. § 4, and here, the employment contract provides for arbitration in Fajardo, Puerto Rico. (Docket No. 7-1 at p. 3.) Rule 12(b)(6) (failure to state a claim) is also inapt for SMIDF's motion. The First Circuit Court of Appeals has held that motions to compel arbitration are to be treated under a summary judgment standard. Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021) ("The summary judgment standard, which

evaluates the evidentiary supportability of claims, is more appropriate than Rule 12's plausibility standard, which is limited to a facial analysis of the pleadings, for evaluating whether a moving party has met its burden of demonstrating that arbitrability is not 'in issue.'").

Turning to the substance of defendant's motion, for a court to grant a motion to compel arbitration, it must ascertain whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." Paulson PRV Holdings LLC, 2024 WL 5412904, at *2 (quoting Gove v. Career Sys. Dev. Corp., 689 F. 3d 1, 4 (1st Cir. 2012)). "Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Here, the parties do not dispute that a valid arbitration agreement exists. Nor do the parties dispute that plaintiff's employment discrimination claim falls within the substantive scope

of the arbitration provision. Rather, the parties disagree over whether a court or an arbitrator must decide (1) whether a failure to comply with the employment contract's dispute resolution provisions presents a bar to arbitration, (2) whether the arbitration provision survives the termination of plaintiff's employment, and (3) whether the defendant has waived its right to arbitration. Specifically, prior to the initiation of this action, plaintiff alleges that the defendant failed to initiate arbitration because it asserted both that her claim was time-barred for failure to comply with the dispute resolution provisions of the employment agreement, and that in any case, her claim was "moot" due to her termination as an employee. Plaintiff also argues that the defendant waived its right to arbitrate by both failing to maintain an "Office of Human Resources" as referenced in the dispute resolution provisions of the employment contract, and by failing to initiate arbitration in response to her repeated demands. Defendant now argues before this Court that the plaintiff should be compelled to arbitrate because these issues should be resolved by an arbitrator, not the Court. The Court addresses each argument in turn and concludes that none prevents this Court from ordering that the parties proceed to arbitration.

**i. Compliance with dispute resolution procedures**

In determining whether a claim falls within the scope of the parties' arbitration agreement, i.e. whether a claim is arbitrable, a threshold question is who — the court or the arbitrator — decides questions of arbitrability. See Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 508 (1st Cir. 2020). Where the parties, by "clear and unmistakable evidence," delegate issues of arbitrability to an arbitrator, "'the courts must respect the parties' decision as embodied in the contract' and send the issue to the arbitrator to decide." Bosse v. New York Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021) (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 65 (2019)). The "clear and unmistakable evidence" standard, however, is "demanding" and a broad arbitration clause purporting to commit the parties to arbitrate matters "'arising out of or relating to' the parties' underlying contractual relationship is insufficient." Biller, 961 F.3d at 510 n.7.

Where the parties have not provided clear and unmistakable evidence of delegation, courts have constructed certain presumptions that control the assignment of responsibility for deciding questions of arbitrability. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 9 (1st Cir. 2005). "These presumptions operate within the underlying framework that 'any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). The Supreme Court articulated one such presumption when it held, in Howsam v. Dean Witter Reynolds, Inc., that "'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator to decide." 537 U.S. 79, 84 (2002) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 555-58 (1964)).

The paradigmatic example of such a procedural issue that is presumed to be left for the arbitrator is compliance with contractual dispute resolution procedures. In John Wiley & Sons, Inc. v. Livingston, the Supreme Court held that whether the parties had complied with a collective bargaining agreement's grievance procedure was a matter of "procedural" arbitrability best left for the arbitrator to decide. 376 U.S. 543, 555-58 (1964). Similarly, in Marie v. Allied Home Mortgage Corp., the First Circuit Court of Appeals held that compliance with an arbitration agreement which required that arbitration be initiated "within sixty days of the action, inaction, or occurrence about which the party initiating the arbitration is complaining" was a matter of procedural arbitrability presumed to be left to the arbitrator. 402 F.3d at 11. The Supreme Court has noted that such procedural issues

are frequently inextricably intertwined with the merits of a dispute and attempts to arbitrarily separate them risks undermining the speedy settlement of disputes which arbitration is designed to promote. John Wiley & Sons, 376 U.S. at 558. The presumption that arbitrators will decide procedural arbitrability matters also aligns with party expectations and institutional competence, because where a matter "concerns contract interpretation and arbitration procedures[,] [a]rbitrators are well situated to answer that question." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 453 (2003). Indeed, courts consistently treat compliance with grievance procedures in employment contracts as presumptively a matter of procedural arbitrability that is for the arbitrator. See, e.g., Oil, Chem. and Atomic Workers' Intern. Union, Local 4-447 v. Chevron Chem. Co., 815 F.2d 338 (5th Cir. 1987); Bell Atlantic-Pennsylvania, Inc. v. Commc'ns Workers of Am., AFL-CIO, Local 13000, 164 F.3d 197 (3d Cir. 1999); United Steel Workers of Am., AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc., 505 F.3d 417 (6th Cir. 2007).

Here, whether plaintiff complied with the employment agreement's dispute resolution procedures, and whether defendant was in violation of the agreement by failing to maintain an Office of Human Resources for the receipt of employee complaints, are exactly the kind of contractual prerequisites to

arbitration that constitute a matter of procedural arbitrability that, in absence of clear and unmistakable evidence to the contrary, are left to the arbitrator. The fact that the dispute resolution provisions provide that failure to comply with their requirements means that a claim "shall not be arbitrable," Docket No. 12-1 at p 4, does not constitute the kind of clear and unmistakable evidence that would overcome the presumption that those procedural issues are left to the arbitrator. See Saint Gobain Ceramics & Plastics, Inc., 505 F.3d at 422-25 (holding similar language insufficient to overcome presumption of arbitrability and noting that the majority of circuits have held the same).

### ii. Survivability of the arbitration clause[3]

Whether the enforceability of an arbitration clause is to be decided by the court or an arbitrator depends on the nature of the challenge to the arbitration clause. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006). Where the

[3] Consistent with their motion to compel arbitration, defendants do not argue before this Court that plaintiff's termination precludes the parties from arbitrating. Rather, plaintiff alleges that prior to this litigation defendant told plaintiff that her claim was "moot" due to her termination. See Docket No. 1 at p. 16, ¶58. This argument goes to whether the arbitration provisions of the employment agreement survive the contract's termination and is therefore an issue of arbitrability. To avoid the scenario in which the parties return to the Court to dispute this issue, and because, in the absence of clear and unmistakable evidence to the contrary, questions of arbitrability are for courts, the Court addresses it here.

challenge to enforceability is "on a ground that directly affects the entire agreement," such as an argument that the entire contract is unconscionable or that it was procured by fraud, "that challenge is ordinarily for the arbitrator to decide." Biller, 961 F.3d at 512 (quoting Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010)). Where the challenge is a "targeted, independent challenge to the arbitration clause itself," however, it raises the issue of whether the parties have agreed to arbitrate at all and "the court must decide that challenge before it can compel arbitration." Id. An argument that the arbitration clause lapsed because it did not survive the termination of the agreement is such a targeted challenge to the arbitration clause itself and must be decided by the Court. Id.

Therefore, the Court turns to the question of whether the arbitration provision survived plaintiff's termination. Unless the parties provide to the contrary, "an arbitration provision 'is severable from the remainder of the contract.'" Id. (quoting Buckeye Check Cashing, Inc., 546 U.S. at 445). Furthermore, "arbitration clauses are presumed to survive contract termination." Huey Sons & Sky Int'l LTD. v. Blue Ocean Int'l Bank, LLC, No. CV 25-1518 (GMM), 2026 WL 765586, at *3 (D.P.R. Mar. 18, 2026). Neither party points the Court to any provision of the employment agreement which would suggest

otherwise, and the Court finds no evidence of the intent to derogate from the survivability rule. Rather, the arbitration provision of the employment agreement explicitly states that it covers disputes over plaintiff's "termination of employment." (Docket No. 12-1 at p. 3.) Thus, notwithstanding the fact that defendant terminated plaintiff's employment, the arbitration clause in the employment agreement remains enforceable. See Silva Durán v. Burlington Coat Factory of P.R. LLC, No. CV 24-1193 (FAB), 2025 WL 1033958 (D.P.R. Mar. 4, 2025), report and recommendation adopted sub nom. Silva-Durán v. Burlington Coat Factory of P.R., No. CV 24-1193 (FAB), 2025 WL 9142880 (D.P.R. Mar. 26, 2025).

**iii. Waiver**

Plaintiff's primary argument in opposition to defendant's motion to compel arbitration is that defendant has waived its right to arbitrate. She contends that the issue of waiver is properly for a court to decide. The question of who decides the issue of waiver, a court or arbitrator, is nuanced and in certain respects unsettled. A brief background on the issue is therefore helpful before turning to the case at hand.

The long-standing consensus among courts regarding waiver of the right to arbitrate was that it was an issue for the court to decide. See Marie, 402 F.3d at 12 (citing 2 I.R. MACNEIL ET AL., FEDERAL ARBITRATION LAW § 21.3 (1994)). The Supreme Court's

decision in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), however, challenged this consensus. There, the Supreme Court, in holding that issues of "procedural arbitrability" are presumptively for the arbitrator, stated that the presumption is that the arbitrator should decide "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met," as well as "allegations of waiver, delay, or a like defense to arbitrability." Id. at 84-85 (quotations omitted).

Notwithstanding this passage in Howsam, however, many courts have held that certain allegations of waiver remain issues for a court, rather than the arbitrator. Specifically, courts have held that waiver due to *litigation conduct* remains an issue for a court, distinguishing this type of waiver from the kind of "waiver" due to failure to meet contractual pre-requisites to arbitration that the Supreme Court was primarily addressing in Howsam. The First Circuit Court of Appeals, in Marie v. Allied Home Mortgage, Corp., 402 F.3d 1 (1st Cir. 2005), has taken this approach. The Marie court reasoned that courts are well-suited to address matters arising from litigation conduct such as forum-shopping and abuse of judicial process. Id. at 13. It also noted that sending the issue of waiver to the arbitrator would be inefficient, as if the arbitrator were to find a party had waived

its right to arbitrate, the matter would inevitably end up back before the courts, creating unnecessary delay. Id. at 13-14. Notably, in Marie, the conduct at issue was litigation before the EEOC, but the court held that the same rationale applied equally to conduct before administrative agencies as to conduct before a court. Id. Other circuits have followed the First Circuit Court of Appeals' approach in holding that waiver due to litigation conduct remains an issue for the courts. See Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207 (3d Cir. 2007); Martin v. Yasuda, 829 F.3d 1118, 1123 (9th Cir. 2016); Meyer v. Uber Techs., Inc., 868 F.3d 66 (2d Cir. 2017); Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd., 999 F.3d 257 (5th Cir. 2021); but see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co., 328 F.3d 462, 466 (8th Cir. 2003).

Sometimes, however, a party is alleged to have waived their right to arbitrate through *pre-litigation conduct*, such as pre-litigation communications between counsel, or unnecessarily delaying the initiation of an arbitration. Few courts have directly addressed whether this type of waiver is an issue for the arbitrator or for the court. The leading case on this question is JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388 (6th Cir. 2008). Citing Marie, the Sixth Circuit Court of Appeals held that the issue of whether a party had waived its right

to arbitration through pre-litigation conduct was an issue for courts to decide. Id. at 394. The court held that the same policy reasons which counsel the judicial resolution of litigation-conduct waiver also support the judicial resolution of pre-litigation conduct waiver as well — including that courts are especially equipped to decide whether parties have abused the litigation and pre-litigation process, and that the referral of the issue to the arbitrator would be "exceptionally inefficient" because, where waiver is found, the case ultimately ends up back at the court. Id. The Sixth Circuit Court of Appeals' decision aligns with other courts, including the First Circuit Court of Appeals, that have continued to decide the issue of waiver by pre-litigation conduct even after Howsam. See In Re Tyco Int'l Ltd. Sec. Litig., 422 F.3d 41 (1st Cir. 2005); Brown v. Dillard's, Inc., 430 F.3d 1004 (9th Cir. 2005); Growtech Partners v. Accenture LLP, 118 F. Supp. 3d 920 (S.D. Tex. 2015); Siracusa v. Marriott Int'l Inc., 319 F. Supp. 3d 596 (D.P.R. 2018) (Besosa, J.).

Here, plaintiff argues that defendant has waived its right to arbitrate by failing to initiate arbitration in response to her multiple demands to do so. Defendant appears to argue that such an issue should be decided by the arbitrator. See Docket No. 16 at p. 2 ("The matters related in plaintiff's opposition amount to allegations of procedural arbitrability

issues; not substantive matters. Procedural arbitrability matters are to be disposed of by the Arbitration Panel, not the Court.”). The Court holds that the issue of whether defendant waived its right to arbitration is an issue for the court to decide. As the Sixth Circuit Court of Appeals observed in JPD, Inc., judicial resolution of allegations of waiver by pre-litigation conduct is consistent with the policy reasons articulated in Marie and is also consistent with the First Circuit Court of Appeals’ approach to questions of waiver by pre-litigation conduct. See In Re Tyco Int’l Ltd. Sec. Litig., 422 F.3d 41 (1st Cir. 2005) (deciding issue of waiver by pre-litigation conduct).

Turning now to the merits of whether defendant has waived its right to arbitrate, waiver will be found where a party’s conduct is “inconsistent with the future desire to arbitrate . . . .” Marie, 402 F.3d at 11 (citing Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 220–21 (1st Cir. 1995)). A party alleging waiver need not show that they have been prejudiced by the defendant’s conduct for a court to find that the right to arbitrate has been waived. Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022). Nonetheless, “[i]n considering whether a party has waived its arbitration right, courts are consistently mindful of the strong federal policy favoring arbitration.” Creative Sols. Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001).

Accordingly, "waiver is not to be lightly inferred." Siracusa, 319 F. Supp. at 600 (quoting Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 293 (1st Cir. 1986)). "[T]here is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts." In Re Tyco Int'l Ltd. Sec. Litig., 422 F.3d at 46. Finally, "[r]easonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration." Id. at 44 (citing Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 61 (1st Cir. 2003)).

Two cases are instructive as to when pre-litigation communications between counsel can serve to waive arbitral rights. In In Re Tyco Int'l Sec. Litig., when faced with a demand to arbitrate, the defendant sent a letter in which he declined to consent to the use of a particular arbitral institution unless the parties would agree to a stay pending the outcome of his criminal case, citing the impact of any arbitration on his Fifth Amendment rights. Id. at 42. When that proposal was not accepted, he failed to take any action to initiate arbitration for six months until he was finally sued by the plaintiff. Id. at 43. During litigation, he engaged in dilatory tactics apparently intended to delay an arbitration until the conclusion of his criminal case. Id. The First Circuit Court of Appeals held that the defendant had waived

his right to arbitrate. Id. at 45. Even assuming his initial letter response was ambiguous, the court held that his failure to initiate arbitration and his subsequent litigation tactics constituted conduct inconsistent with the intention to arbitrate. Id. at 45-46.

By contrast, in JPD, Inc. v. Chronimed Holdings, Inc., in a dispute over whether an investor correctly calculated the profits of a company it had acquired for purposes of awarding an executive bonus, the executive made a demand for arbitration to the investor. 539 F.3d at 390. The investor responded that the executive's claim was "not sufficient for initiating the [arbitration procedures]" because it did not specify the objections to the investor's calculations with the requisite specificity. Id. at 390 (quotations omitted). The executive commenced suit several days later, arguing that the investor had waived its right to arbitrate by frustrating his attempt to commence arbitration. Id. The Sixth Circuit Court of Appeals held, however, that the investor had not waived its right to arbitrate. Id. at 394. Rather than "shrugging off the arbitration process," the court read the investor's response as "simply signaling [that it] would challenge the sufficiency of [the executive's] objection if he chose to proceed with arbitration." Id. The letter's ambiguity, the court found, "prevents its meeting

the 'completely inconsistent' test for conduct that waives the right to invoke the contract's arbitration provision." Id.

Here, the Court finds that the defendant has not waived its right to arbitrate. Plaintiff's characterization of defendant's letter of May 8, 2026 (which has not been provided to the Court) states only that the defendant asserted timeliness and mootness defenses. Plaintiff does not claim that defendant made an outright refusal to arbitrate. Rather, even countenancing plaintiff's characterization, defendant could have simply been representing that it would assert these defenses in a future arbitration. See JPD, Inc., 539 F.3d at 394. Given the letter's ambiguity, it cannot be said to be "completely inconsistent" with the intention to arbitrate. Id. To the contrary, defendant asserted the position that plaintiff's claim was governed by the arbitration provision of the employment agreement during proceedings before the UAD and takes the same position before this Court. See Marie, 402 F.3d at 16 ("The employer's failure to initiate arbitration during the pendency of [administrative] proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate."). Even if the May 8 letter is construed as defendant ignoring plaintiff's demand to arbitrate, this Court has previously declined to find waiver notwithstanding an employer's initial refusal to submit a

matter to arbitration, where the employer responded to the complaint with a motion to compel arbitration. Siracusa, 319 F. Supp. 3d at 601.

Nor has defendant caused the kind of long-running delay which typically accompanies waiver. From plaintiff's first demand for arbitration to defendant's response on May 8 was only sixteen days. This lawsuit followed twenty-two days later. Defendant also immediately moved to compel arbitration in response to plaintiff's complaint. In contrast to the six-month delay in In Re Tyco Int'l. Sec. Litig., which was then followed by dilatory litigation tactics, defendant has not caused such excessive delay as to waive its right to arbitration. See Trout v. Organización Mundial de Boxeo, Inc., 965 F.3d 71, 77 (1st Cir. 2020) (no waiver where defendant "filed its motion to compel arbitration as soon as the case reached the proper forum.").

**B. Stay of Proceedings**

Defendant requests that, in addition to issuing an order compelling arbitration, this Court dismiss the action without prejudice. (Docket No. 7 at p. 18.) Historically, the First Circuit Court of Appeals has held that on a motion to compel arbitration "in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." Dialysis Access Ctr., LLC v.

RMS Lifeline, Inc., 638 F.3d 367, 372 (1st Cir. 2011). The Supreme Court has since held, in Smith v. Spizzirri, however, that where a court finds that a dispute is subject to arbitration, and a party has requested a stay of the proceeding pending arbitration, the court lacks the discretion to dismiss the suit on the basis that all the claims are subject to arbitration. 601 U.S. 472, 475-76 (2024).

Because the plaintiff has requested a stay, see Docket No. 19 at p. 9, pursuant to Section 3 of the FAA, the Court grants this request. See Silva-Durán v. Burlington Coat Factory of Puerto Rico, No. CV 24-1193, 2025 WL 914288 (D.P.R. Mar. 26, 2025) (Besosa, J.) (staying proceedings pending arbitration). The Court orders that the parties file a joint status report with the Court within sixty days providing an update on the progress of their arbitration.

**C. Attorney's Fees**

Finally, both plaintiff and defendant seek the award of their attorney's fees and costs. Docket No. 7 at p. 18; Docket No. 11 at p. 14. Under the "American-rule," litigants generally bear their own costs. Loc. 285, Serv. Emps. Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc., 64 F.3d 735, 737 (1st Cir. 1995). A court may award the prevailing party its attorney's fees, however, if it determines that the losing party has "acted in bad

faith, vexatiously, or for oppressive reasons . . . ." Id. at 737 (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1974). Here, neither party's conduct warrants the award of attorney's fees. Plaintiff filed her complaint in response to defendant's initial failure to submit her claim to arbitration and in the face the ADA's 90-day statute of limitations. Defendant responded by filing a motion to compel arbitration pursuant to the parties' employment agreement. Neither party has acted vexatiously or in bad faith before this Court. Accordingly, the parties' requests for attorney's fees are **DENIED.**

**III. Conclusion**

For the reasons set forth above, defendant's motion, insofar as it requests an order to compel arbitration, is **GRANTED.** The motion is otherwise **DENIED**, and the case is **STAYED.**

The parties shall file a joint status update **no later than October 23, 2026** providing an update on the progress of their arbitration.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 24, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE